# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

SOUTHERN UNIVERSITY SYSTEM
FOUNDATION

VERSUS

ANDRE HENDERSON AND GARY SHELTON

CIVIL ACTION

14-00288-JJB-RLB

# RULING

Before the Court are cross-motions for summary judgment filed by Plaintiff/Defendant-in-Counterclaim, Southern University System Foundation ("SUSF") and Defendant/Plaintiff-in-Counterclaim, Gary Shelton ("Shelton").[1]  Both *Motions* are opposed.[2]  SUSF has filed a *Reply* in further support of its *Motion*.[3]  Oral argument is unnecessary.  The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  For the following reasons, SUSF's *Motion* shall be granted, and Shelton's *Motion* shall be denied.

## I.    STATEMENT OF MATERIAL FACTS

As an initial matter, the Court finds that the *Statement of Uncontested Material Facts*[4] submitted in support of SUSF's *Motion* are deemed to be admitted for the purposes of SUSF's *Motion* due to Shelton's failure to controvert them as required by Local Rule 56(b).  Local Civil Rule 56(b) requires the nonmoving party to submit disputed facts as to which there is a genuine issue to be tried.[5]  Shelton failed to submit a *Statement of Material Facts* or identify evidence that

---

[1] Doc. 84 and Doc. 86.  Plaintiff/Defendant-in-Counterclaim SUSF has filed a *Motion for Summary Judgment*, whereas Defendant/Plaintiff-in-Counterclaim Shelton has filed a *Motion for Partial Summary Judgment*.
[2] Doc. 90 and Doc. 89.
[3] Doc. 98.
[4] Doc. 84-2.  SUSF cites to the *Affidavit* of Alfred Harrell, Shelton's deposition testimony, and Shelton's Interrogatory Responses in support of its *Statement of Uncontested Material Facts*.
[5] Local Rule 56(b) states: "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be

would create a genuine issue of material fact as required by this Court's local rules.[6]  Accordingly, the Court finds that Shelton has failed to carry his burden of establishing a genuine issue of material fact by controverting SUSF's facts and supporting evidence.

The Court further finds that while Shelton did submit a *Statement of Uncontested Facts*[7] in support of his *Motion for Partial Summary Judgment*, facts 1 through 3 do not create a genuine issue of material fact, as they are essentially undisputed,[8] and fact 4 calls for a legal conclusion,[9] and is not, in and of itself, a fact.

Therefore, the facts in SUSF's *Statement of Uncontested Material Facts* are deemed admitted.

## II.    FACTUAL BACKGROUND[10]

This legal battle turns on who lawfully owns the rights to the mark, THE BAYOU CLASSIC and/or BAYOU CLASSIC.  The mark itself was born out of the annual football game, an intense rivalry, between Southern University and Agricultural and Mechanical College ("Southern University") and Grambling State University ("Grambling").  Since early July 1974, Southern

---

[6] tried.  All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this Rule."

[6] Shelton submitted five exhibits with his *Opposition*.  However, Shelton only cites to three exhibits in his *Opposition*: his trademark assignments filed with the Secretary of State; correspondence from counsel for SUSF to Shelton concerning "infringement of Southern University trademark;" and excerpts from his deposition testimony.  The Court finds that none of these exhibits, as relied upon by Shelton, create a genuine issue of material fact.  As for the remaining exhibits, the Court is under no obligation to search through them in order to identify a disputed fact.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)("The court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[7] Doc. 86-2.

[8] SUSF "contested" how the first three statements of fact were written, but admitted that (1) the Louisiana Secretary of State refused to renew certain trademark and service mark applications for SUSF, (2) neither SUSF nor Shelton has federally registered any BAYOU CLASSIC trademark or service mark, and (3) "Andre Henderson registered BAYOU CLASSIC marks with the Louisiana Secretary of State's Office and, when SUSF asked him to cancel said registrations, [he] sold and assigned the registrations to Shelton for a nominal amount."  Doc. 89-1.

[9] Shelton's Fourth Statement of Uncontested Fact states: "SOUTHERN UNIVERSITY SYSTEM FOUNDATION is infringing on GARY SHELTON'S registrant's rights." (emphasis original).  Doc. 86-2.

[10] The majority of the facts comprising the "Factual Background" are taken from SUSF's *Statement of Uncontested Material Facts* because they are not in dispute for those reasons set forth by the Court in Section I of this *Ruling*.

University and Grambling have continuously and exclusively used the BAYOU CLASSIC marks in interstate commerce to promote the football rivalry through educational and entertainment services, licensed clothing, apparel, and other merchandise.  In December of 1974, the universities registered the BAYOU CLASSIC word mark with the Louisiana Secretary of State's Office ("Secretary of State") in class 41 for education and entertainment, and in July of 1984, the universities registered the BAYOU CLASSIC logo mark with the Secretary of State for class 16 pertaining to paper goods and printed matter, and for class 24 pertaining to clothing.[11]

Pursuant to a Cooperative Endeavor Agreement ("CEA"), effective October 2, 2010, entered into by SUSF, the Board of Supervisors for the University of Louisiana on behalf of Grambling, and the Board of Supervisors of Southern University, SUSF was jointly appointed and licensed by the universities to undertake certain responsibilities regarding the telecast and promotion of the annual Bayou Classic football game, including ancillary activities.  Since 2010, SUSF has continued to use, promote, and market the BAYOU CLASSIC mark in connection with the annual Bayou Classic football game.   As a result of good will associated with the BAYOU CLASSIC mark, many companies have paid licensing fees and royalties to SUSF in order to associate their products and services with the Bayou Classic.

Although the universities originally registered the BAYOU CLASSIC mark with the Secretary of State, they subsequently let their registrations lapse.  When SUSF attempted to re-file its trademark applications in 2013 to renew the BAYOU CLASSIC word and logo marks, its applications were denied because the marks had been registered by Andre Henderson ("Henderson").   SUSF learned that Henderson had registered three BAYOU CLASSIC trademark and service mark registrations in November of 2012 in class 25 (clothing), and on April 22, 2013

---

[11] Doc. 84-3, p. 3, no. 5; and p. 4, no. 6.

for classes 16 (paper goods & printed matter), 35 (miscellaneous), 41 (education and entertainment), 42 (miscellaneous), and 43 (advertising and business).  SUSF attempted to amicably resolve the registration issue with Henderson to no avail.  Instead, Henderson sold and transferred his BAYOU CLASSIC registrations to Shelton, who now claims to have sole ownership of the BAYOU CLASSIC trademark and service mark.  It is undisputed that Henderson only attempted to sell t-shirts and hats on two occasions during the Bayou Classic football games in November of 2013 and 2014.

## III.   PROCEDURAL HISTORY

On April 3, 2014, SUSF filed the instant lawsuit in state court against Henderson and Shelton for trademark infringement, fraudulent registration, dilution, unfair competition, and unfair trade practices arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq.*, and Louisiana trademark law, La. R.S. 51:221; La. R.S. 51:223.1; La. R.S. 51:224.[12]  Subsequently, on May 9, 2014, Shelton removed the lawsuit to federal court.[13]  In his *Answer*, Shelton denied all of SUSF's claims and further asserted a counterclaim against SUSF for infringement based upon his acquisition of THE BAYOU CLASSIC trademark registrations.[14]  Shelton appears to seek injunctive relief pursuant to Section 32 (1) of the Lanham Act, 15 U.S.C. § 1114(1), and an award of attorney's fees and costs pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.[15]

---

[12] Doc. 1-1 at pp. 3-14.

[13] Doc. 1.  Shelton filed an *Amended Notice of Removal* on May 13, 2014. Doc. 3.

[14] Doc. 6.  Shelton also asserted third-party claims against various entities (i.e., AT&T, Delta Airlines, Cover Girl, Shell Oil, Pontiac, L'eggs, Coors, Tampax, DaimlerChrysler, Coca-Cola, Bellsouth, and American Airlines) that were subsequently either dismissed by the Court (Docs. 74; 75; 82; and 83) or by Shelton via *Notice of Voluntary Dismissal*. Doc. 77.

[15] Doc. 6.  The Court does not construe any of the counterclaims asserted by Shelton as arising under 15 U.S.C. § 1125.  Nevertheless, even if the Court were to construe the existence of such a claim, it would fail for the reasons discussed *infra* in Section V(B).

SUSF now moves for summary judgment on the grounds that it has first priority of rights of the BAYOU CLASSIC trademarks and service marks.  SUSF also seeks a permanent injunction enjoining Shelton from using the BAYOU CLASSIC trademark and service mark, and an order directing the cancellation of the BAYOU CLASSIC trademark and service mark registrations in Shelton's name.  In response, Shelton has filed an *Opposition* and his own *Motion for Partial Summary Judgment* in support of his counterclaim.  Essentially Shelton argues that he is the rightful owner of the BAYOU CLASSIC trademark and entitled to injunctive relief for three reasons: he is in possession of the BAYOU CLASSIC trademark registrations; SUSF failed to renew its trademark applications with the Secretary of State in a timely manner; and the BAYOU CLASSIC has never been a federally registered trademark.

## IV.    LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]  "An issue is material if its resolution could affect the outcome of the action."[17]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[18]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[19]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific

---

[16] Fed. R. Civ. P. 56(a).

[17] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).

[18] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[19] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).

facts showing the existence of a genuine issue concerning every essential component of its case.'"[20]  However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[21]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[22]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[23]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[24]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[25]

## V.    ANALYSIS

### A.   Preliminary Issue: Trademark Infringement Under 15 U.S.C. § 1114

Before delving into its analysis, the Court finds it is necessary to address the fact that, contrary to Shelton's position otherwise, SUSF has not asserted a trademark infringement claim under 15 U.S.C. § 1114, nor could it.[26]  Both Shelton and SUSF are in agreement with the fact that

---

[20] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

[21] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[22] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[23] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[24] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[25] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[26] Doc. 90.  In Shelton's *Memorandum in Opposition* to SUSF's *Motion for Summary Judgment*, he argues that SUSF is not entitled to any relief under 15 U.S.C. § 1114 because the BAYOU CLASSIC mark has never been federally registered.  Doc. 90, p. 6.

the BAYOU CLASSIC mark is not a federally registered trademark.[27]   Notably, a federally

registered trademark is essential to stating a viable cause of action for trademark infringement

under 15 U.S.C. § 1114.[28]   Curiously, in spite of his acknowledgment and assertion that the

BAYOU CLASSIC is not a federally registered mark, Shelton seeks partial summary judgment in

his favor under 15 U.S.C. § 1114.[29]   Based on the foregoing discussion, the Court finds that

Shelton's 15 U.S.C. § 1114(a) counterclaim fails as a matter of law.   Consequently, Shelton's

summary judgment motion must likewise fail.

   B.   Rightful Ownership of the BAYOU CLASSIC mark

   SUSF has asserted its federal claims of common law trademark infringement under 15

U.S.C. § 1125 of the Lanham Act, which creates liability for "[a]ny person who …uses in

commerce any word, term, name, symbol, or device … which is likely to cause confusion, or to

cause mistake, or to deceive as to the affiliation, connection, or association of such persons with

another person, or as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person….".   There are two elements necessary for a successful

infringement claim under the Lanham Act.   The plaintiff must first establish "ownership in a

legally protectable mark" and second show "a likelihood of confusion in the minds of potential

customers caused by the infringer's use of the mark."[30]   In its *Motion*, however, SUSF solely seeks

---

[27] In its *Statement of Contested Material Facts*, SUSF admits that it has never federally registered any BAYOU CLASSIC trademark or service mark.  Doc. 89-1, p. 2, fact 2.  In his *Opposition*, Shelton argues that the "BAYOU CLASSIC was not and has never been federally registered." Doc. 90, p. 6.

[28] *Git-R-Done Prod., Inc. v. Giterdone C. Store, LLC*, 2016 WL 1337342, *3 (S.D.Miss. April 5, 2016)("Although federal law does recognize a cause of action for trademark infringement, 15 U.S.C. § 1114(1), relief is available only to owners of federally registered trademarks…."(quoting *Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc*., 684 F.2d 1134, 1139 n.4 (5th Cir. 1982)).

[29] In his *Memorandum in Support of Motion for Partial Summary Judgment*, Shelton argues that his "state registration certificate provides access to a statutory cause of action for infringement…the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."  Doc. 86-1, p. 5.

[30] *Reservoir, Inc. v. Truesdell*, 1 F.Supp.3d 598, 609 (S.D.Tex. 2014).

a determination that it is the lawful owner of the BAYOU CLASSIC mark based upon its priority of use.

Despite their substantive arguments on this point, both parties agree that under Louisiana law, "the registry of a trade mark or a service mark confers only procedural advantages, and not substantive rights. It confers no greater proprietary rights than exist without registration, and thus the registration by one party, or the lack of registration by the other, is not decisive as to the right of either party to use the trade mark or trade name."[31] "Substantive rights in a trade name may be acquired only by actual usage."[32] Federal jurisprudence echoes this principle. For instance, in *Dallas Cowboys Football Club, LTD v. America's Team Properties, Inc.*, the district court for the Northern District of Texas stated that "[i]t is a fundamental premise that '[t]he exclusive right to a trademark belongs to one who first uses it connection with specified goods.'"[33] The *Dallas Cowboys* court further explained how "[n]either application for nor registration of a mark at the federal level wipes out the prior nonregistered, common law rights of others. The nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user."[34] Hence, the "'senior user' who first uses the mark in the marketplace 'is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it.'"[35]

---

[31] *Couhig's Pestaway Co., Inc. v. Pestaway, Inc.*, 278 So.2d 519, 521 (La.App. 3rd Cir. 1973)(citations omitted).

[32] *La. Granite Yard, Inc. v. LA Granite Countertops*, L.L.C., 47 So.3d 573, 579 (La.App.2 Cir. 8/18/10) (citations omitted). See also, *T.G.I. Friday's, Inc. v. Int'l Rest. Group, Inc.*, 405 F.Supp. 698, 707 (M.D. La. 1975)(explaining how under Louisiana's trademark infringement statute, La. R.S. 51:222(1), "[p]riority of appropriation by use determines a party's proprietary interest in a mark.").

[33] *Dall. Cowboys Football Club, LTD v. Am's Team Props., Inc.*, 616 F.Supp.2d 622, 632 (N.D.Tex. 2009).

[34] *Id.* (quoting 2 J. Thomas McCarthy on Trademarks and Unfair Competition § 16:18.50 (4th ed. 1006)). *See also, Union Nat'l. Bank of Tex., Laredo, TX v. Union Nat'l. Bank of Tex., Austin, TX*, 909 F.2d 839, 842-43 (5th Cir. 1990)("Ownership of trademarks is established by use, not by registration. The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion.")

[35] *Reservoir, Inc.*, 1 F.Supp.3d at 609. (quoting *Union Nat'l Bank of Tex.*, 909 F.2d at 842-43).

Based on the foregoing state and federal law, it is clear that while Shelton is in possession of the trademark registrations for the BAYOU CLASSIC mark and logo, this fact alone does not resolve the parties' battle.   Within the Fifth Circuit, "[o]wnership of a mark is established by use in the market, not by registration."[36]

In this case, SUSF has presented uncontested evidence that while it may not presently hold the trademark registrations, it has continuously used the BAYOU CLASSIC mark and logo in commerce since 1974.  As previously discussed, in 1974 Southern University and Grambling registered the word mark for class 41 (education and entertainment), and Southern University has continued to use the word mark without interruption even after the registration expired.  In 1984, the universities registered the logo mark for class 25 (clothing), and class 16 (for paper goods).  Again, even after the registrations for these marks expired, the universities and SUSF have continued without interruption to use the BAYOU CLASSIC logo.   Shelton has offered no evidence to create a genuine issue of material fact to show any interruption in the Plaintiff's use of the BAYOU CLASSIC mark and logo in commerce.   In fact, Shelton's own deposition testimony lends further support for SUSF's argument.   Shelton testified that of the five classes in which his trademark is registered, he has only used the BAYOU CLASSIC mark in commerce for the limited purpose of selling t-shirts and hats (class 25) during the two days of the Bayou Classic in November of 2013 and 2014.[37]  Further, Shelton offers the deposition of Judge Byron Williams

---

[36] *Id.* (citing *Bd. of Supervisors for La. State Univ. Agric. And Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008); *Union Nat'l Bank of Tex., Laredo*, 909 F.2d 839, 842)).

[37] Doc. 84-5, pp.15, 16, and 18. ("Q.  Okay.  Did you go to the Bayou Classic and sell any merchandise in 2013?  A. I did.  Q.  Okay.  Tell me about what you sold during 2013 Bayou Classic.  A.  Well, I attempted to sell T-shirts and caps…Q. …you said you were trying to sell T-shirts and hats.  Anything else?  A. T-shirts, hats.  I think that may have been it.  Q.  Okay.  Of these T-shirts and hats, … were these Bayou Classic T-shirts and hats and merchandise?  A. They were Bayou Classic T-shirts and merchandise.  Q. I'm sorry. We said T-shirts, hats.  Anything else?  A.  No… Q.  So other than the Saturday and Sunday in 2013 and the Saturday and Sunday in 2014, has there ever been any other time that you sold any other products or services or anything else under the Bayou Classic trademark or service mark?  A. No.  Q. And the only products that you have ever sold that contain the Bayou Classic trademarks would be T-shirts and hats; is that correct?  A: Yes.").  *See also*, Doc. 84-4 (*Answer to Interrogatories and Request for*

who acknowledged that Southern University, Grambling, and SUSF "consistently used" the BAYOU CLASSIC over the last forty years.[38]

The Court finds that based on the undisputed evidence in the record, no reasonable juror could conclude that Shelton is the senior user of the BAYOU CLASSIC marks or logos. Rather, the record evidence clearly establishes that SUSF is the senior user of the BAYOU CLASSIC marks and logos based upon its priority of use. Accordingly, SUSF has established ownership in the BAYOU CLASSIC marks and logos.

C. Cancellation of Shelton's Registrations

As a remedy, SUSF seeks the cancellation of Shelton's trademark registrations of the BAYOU CLASSIC with the Secretary of State. Specifically, SUSF seeks cancellation pursuant to the following provisions of La. R.S. 51:219, which provides that the secretary of state shall cancel from the register:

(4) Any registration concerning which a court of competent jurisdiction shall find

* * * *

(b) That the registrant is not the owner of the mark,

(c) That the registration was granted improperly,

* * * *

---

*Production of Documents*)(INTERROGATORY NO. 2. Identify the date that Defendant first beg[a]n to use THE BAYOU CLASSIC [mark in] commerce and specifically describe all such use. [RESPONSE TO] INTERROGATORY NO. 2. November of 2013, vendor at the Bayou Classic; INTERROGATORY 9. Please list and identify the total annual and monthly revenues received by Defendant in connection with Defendant's alleged ownership of THE BAYOU CLASSIC trademark, including without limitation any and all licensing revenues received by Defendant. RESPONSE TO INTERROGATORY NO. 9. $500.00 in T-shirt sales during the month of November 2013.).

[38] Rec. Doc. 90-1, pp. 46-47 ("Q. And the reference to the name Bayou Classic, the contest between Southern and Grambling has been referenced as the Bayou Classic for at least 40 years? A. Since its inception. Q. And you're not aware that at any point in time there was a year during that 40 year period where that game was not played? A. No. Q. And do you remember during that 40 year period whether there was a time in which that they did not refer to the game as the Bayou Classic? A. Never. Q. Do you remember that the branding of the Bayou Classic was consistently used by the Universities and/or foundations throughout that 40 year period? A. That's correct.").

(5) When a court of competent jurisdiction shall order cancellation of a registration

      on any ground.[39]

Considering this Court has already determined that SUSF is the actual owner of the BAYOU

CLASSIC mark under both state and federal law, and not Shelton, cancellation of Shelton's

trademark registrations is warranted per La. R.S. 51:219(4)(b).

      In the alternative, the Court also finds that cancellation is warranted because Shelton's

registration was granted improperly.  Louisiana Revised Statute 51:212 provides in pertinent part:

> A mark by which the goods or services of any applicant for registration may be
> distinguished from the goods or services of others shall not be registered if it:
>
>                 * * * *
>
> (2) Consists of or comprises matter which may … falsely suggest a connection with
> … educational institutions ….
>
> (3) Consists of or comprises … other insignia, symbol, … or logo … of this state,
> or of any local governmental subdivision of this state, or of any state or
> governmental subdivision thereof, or educational institution ….
>
>                 * * * *
>
> (6) Consists of or comprises a mark which so resembles a mark registered in this
> state or a <u>mark or trade name previously used in this state by another and not
> abandoned</u>, as to be likely, when applied to the goods or services of the applicant,
> to cause confusion or mistake or to deceive.[40]

The record in this case establishes that the BAYOU CLASSIC mark and logo are recognized as

being associated with the intense football rivalry between Southern University and Grambling,

two state universities.  Therefore, Shelton's registrations of the BAYOU CLASSIC mark falsely

suggest a connection with Southern University and Grambling in violation of La. R.S. 51:212(2).

Likewise, the BAYOU CLASSIC mark is also an insignia or logo associated with both Southern

---

[39] La. R.S. 51:219 (4)(b)-(c); (5).
[40] La. R.S. 51:212(2)(3), and (6)(emphasis added).

University and Grambling, again, two educational institutions of the state of Louisiana; therefore, Shelton's registrations are in contravention of La. R.S. 51:212(3).

Additionally, the mark should not have been registered per La. R.S. 51:212(6). As previously discussed, it is undisputed that SUSF originally registered the BAYOU CLASSIC mark and logo with the Secretary of State in 1974 and 1984, but allowed its registrations to lapse. Nevertheless, the evidence in this case conclusively shows that in spite of the registrations lapsing, SUSF has continued to use the BAYOU CLASSIC mark and logo in commerce. Shelton has offered no evidence to refute SUSF's continued use of the mark. Accordingly, the Court finds that SUSF did not "abandon" its mark.[41] The parties through their respective claims have also admitted that use of the BAYOU CLASSIC mark by the opposing party "has created and will continue to create a likelihood of confusion" among the public.[42] Hence, the Court finds that Shelton's registrations should not have been issued because SUSF never abandoned the mark.

Based on the foregoing, the Court finds that because Shelton is not the owner of the BAYOU CLASSIC mark and because he was improperly granted trademark registrations to the

---

[41] Although La. R.S. 51:211 provides no definition for the term "abandon" and Louisiana trademark jurisprudence offers no guidance on its intended meaning, the Court finds guidance in the Lanham Act, 15 U.S.C. § 1127, and federal jurisprudence interpreting the term. The Lanham Act, 15 U.S.C. § 1127 provides:

> A mark shall be deemed to be 'abandoned' … [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not merely to reserve a right in a mark.

Within the Fifth Circuit, a party asserting abandonment must satisfy a two-part test, establishing "the owner of the mark both (1) discontinued use of the mark[,] and (2) intended not to resume its use." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 293 (5th Cir. 2004).

[42] Doc. 1-1, p. 11; Doc. 6, p. 17. The Court further notes that "'[f]actual assertions in pleadings are … judicial admissions *conclusively* binding on the party that made them.' Facts that are admitted in pleadings 'are no longer at issue.'" *Davis v. A.G. Edwards and Sons, Inc*., 823 F.2d 105, 108 (5th Cir. 1987)(quoting *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir. 1983)(citations and footnotes omitted)(emphasis original)). See also, *Martinez v. Bally's La., Inc*., 244 F.3d 474, 477 (5th Cir. 2001)("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention").

BAYOU CLASSIC mark, Shelton's trademark registrations shall be cancelled in accordance with La. R.S. 51:219.

### D.   Is SUSF Entitled to Injunctive Relief?

In addition to the cancellation of Shelton's registrations, SUSF also seeks injunctive relief to prevent Shelton from using the BAYOU CLASSIC trademark and service marks in the future. Pursuant to Louisiana's anti-dilution statute, a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."[43]  The Louisiana Supreme Court has described the anti-dilution "cause of action [as] an extremely wide-reaching one, applying even in the absence of competition between users of the mark and even in the absence of confusion as to the source of goods, and is thus a much more expansive cause of action than infringement, which does require proof of a likelihood of confusion."[44]  As previously discussed, both parties admit that through the continued use of the BAYOU CLASSIC mark by their opponent, a likelihood of confusion, or business injury, will occur.   In fact, Shelton goes so far as to allege that SUSF's continued use will also deceive the public.[45]  Based on the Court's prior finding that SUSF is the actual owner of the BAYOU CLASSIC mark and logo, the Court further finds that Shelton's continued use of the BAYOU CLASSIC is likely to injure SUSF's business reputation in violation of Louisiana's anti-

---

[43] La. R.S. 51:223.1.
[44] *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.*, 652 So.2d 1306, 1312 (La. 1995).
[45] Doc. 6, p. 17, ¶71.

dilution statute.[46]   Accordingly, pursuant to La. R.S. 51:223.1, Shelton is hereby enjoined from making any further use of the BAYOU CLASSIC trademark.

## VI.     CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Southern University System Foundation's *Motion for Summary Judgment*[47] and DENIES Gary Shelton's *Motion for Partial Summary Judgment*.[48]

To the extent there are any remaining viable claims in this matter,[49] this matter is referred to Magistrate Judge for scheduling pretrial deadlines.[50]

Signed in Baton Rouge, Louisiana on October 3, 2016.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[46] Because the Court finds that SUSF is entitled to injunctive relief under Louisiana's anti-dilution statute, the Court declines addressing SUSF's additional arguments for injunctive relief under the Lanham Act.
[47] Doc. 84.
[48] Doc. 86.
[49] On March 11, 2016, the Court cancelled the deadline for the parties' submission of a pretrial order and continued the pretrial conference and trial date due to the parties' wish to mediate their claims.
[50] Considering the Court's findings herein, the Court is unconvinced there are any viable claims remaining as to which there are any contested issues.